## RICE *v.* RICE

[No. 219, September Term, 1966.]

*Decided April 6, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Thomas N. Berry,* with whom was *Earl E. Manges* on the brief, for appellant.

No brief filed by appellee.

BARNES, J., delivered the opinion of the Court.

The appellant, Myron Eugene Rice (the husband) and the appellee, Ruth Twigg Rice (the wife) were married on December 9, 1939 and voluntarily separated in 1962. They entered into a written separation agreement, under seal, on July 19, 1962, both parties to that agreement having been represented by their respective counsel. Three children were born as a result of the marriage of the parties. At the time of the execution of the Agreement two were adults and one son Roger, was still a minor.

The written agreement recited:

> "Whereas, marital difficulties have arisen between the Parties hereto, as a result of which the said Parties have agreed to voluntarily separate and live apart and they have further agreed to a property settlement between them and have agreed with respect to the support of the wife and minor child of the Parties until the time the said minor child of the Parties shall have graduated from high school, and to effectuate this said purpose, this agreement is now executed: * * *
>
> "(1) Custody of Roger Rice, minor son of the Parties, shall be in the Party of the Second Part hereto; [1]
>
> "(2) The husband agrees to pay unto the wife the sum of Forty ($40.00) Dollars per week for the support and maintenance of herself and the said Roger Rice, minor child of the Parties, for a period of thirty months from date and the title to said property shall be conveyed to Earl E. Manges and Harold E. Naughton, Trustees, to hold until said time, and at which time it shall be conveyed to Ruth Twigg Rice in fee

---

1. It was conceded at the argument that Roger had been inducted into the Armed Forces of the United States and this paragraph (1) was no longer effective.

simple; and in the meantime the said Ruth Twigg Rice shall have the exclusive right to live in said property, and *it is specifically covenanted and agreed that the said payment for alimony or support shall immediately cease and determine upon the conveyance of title to said property to her* and the wife shall pay the payments on the mortgage in the meantime;

"(3) The husband *does hereby transfer and assign to the wife* all of his right, title and interest in and to *the furniture and other personal property accumulated by the Parties during their marriage,* excepting the Graveley tractor, tools, and other personal items owned by the Party of the First Part, which shall remain the property of the said husband;

\* \* \*

"(7) In the *event a divorce between the Parties during the lifetime of this Agreement,* the question of future alimony shall be left to be determined by the Court granting the divorce; \* \* \*." (Emphasis supplied).

The husband made the monthly payments to the wife for the agreed thirty months and the residential real estate was conveyed to the wife by the trustees on January 22, 1965 in accordance with the agreement. Roger also was graduated from high school during the thirty month period.

On February 9, 1965, the wife filed a bill of complaint in the Circuit Court for Allegany County for a divorce a vinculo matrimonii, alimony, counsel fees and other relief. She alleged the marriage, the mutual separation by agreement of the parties, that the three children were adults and that the husband made approximately $150 a week. The husband contested any allowance of alimony and counsel fees relying on the agreement of July 19, 1962 and alleging that he had fully complied with its terms.

After the taking of testimony before an examiner (the agreement of July 1, 1962 was introduced as an exhibit), the Chancellor passed a decree on April 1, 1965 which divorced the parties a vinculo matrimonii and provided:

"* * * [T]hat the right of the Complainant to alimony for her maintenance and support is hereby reserved by the Court for the passage of a further order in this cause as and when the occasion arises, *subject to the provisions of the separation agreement filed herein.*" (Emphasis supplied).

The last clause in italics was added to the form of the decree originally prepared after discussion with counsel for the husband.

On July 12, 1965, the wife filed a petition for alimony. The husband contested on the ground that the agreement was to terminate when the payments for the thirty month period had been made and the residence property deeded to the wife, all of which had been accomplished.

A hearing was held before the Chancellor (Hamill, J.) in August, 1965, at which the Chancellor, after hearing counsel, declined to permit the introduction of testimony by counsel for the husband and the wife, who had represented the parties at the time of the negotiation and execution of the separation agreement, notwithstanding the ruling of the Chancellor that the separation agreement was ambiguous in regard to whether alimony could be allowed by the court. After a hearing on October 20, 1965 on the merits of the petition for alimony, the Chancellor filed a written opinion, and on October 26, 1965, passed an order allowing the wife $30 alimony a month, subject to further order of the court. An appeal to this Court was timely taken from that order.

If it be assumed, *arguendo,* that the separation agreement was ambiguous, as the Chancellor found to be the case, the decisions of this Court indicate that parol evidence is admissible to show the true sense and meaning of the words used or their intended application. The admission of parol evidence *to explain* the meaning of terms used in an ambiguous agreement does not violate the parol evidence rule as such parol evidence *does not vary or contradict* the provisions of the writing but merely explains the language of the writing or its application under the surrounding circumstances. As Judge Prescott, for the Court, in summarizing the Maryland law, aptly stated in

*Eastover Stores, Inc. v. Minnix,* 219 Md. 658, 666, 150 A. 2d 884 (1959):

> "* * * [W]here doubt arises as to the true sense and meaning of the words themselves or difficulty as to their application under the surrounding circumstances, the sense and meaning of the language may be investigated and determined by evidence *dehors* the instrument."

Upon the Chancellor's determination that the separation agreement was ambiguous, the proffered parol evidence should have been admitted. In our opinion, however, the separation agreement was not ambiguous, but, on the contrary, was clear and unambiguous. Its provisions clearly barred the wife's right to alimony or support upon the completion of the support payments for the thirty month period and the conveyance of the residence property to the wife. The language of Paragraph (2) above quoted, states that upon the conveyance of the property (which took place after the expiration of the thirty month period), the payment for alimony or support "shall immediately cease and determine." The provisions of Paragraph (7) were operative only if, as is stated, "in the event of a divorce between the Parties *during the lifetime of this Agreement,* the question of future alimony shall be left to be determined by the Court granting the divorce." (Emphasis supplied). The testimony is uncontradicted that the separation agreement had been fully completed, the payments made, the personal property and the residence property transferred to the wife and that Roger was graduated from high school prior to the filing of the bill of complaint for a divorce a vinculo matrimonii by the wife. The bill of complaint was not filed "during the lifetime of the agreement" and there was no power given the court to determine future alimony by Paragraph (7).

The separation agreement was intended to be a complete and final adjustment of their marital rights including alimony and support for the wife. The wife received the residence property, substantially all of the personal property and all of the cash payments provided for in the agreement. After the completion of the payments and the transfer of title to the residence prop-

erty she was not entitled to any further support payments. The Chancellor had no right to modify a contract between the parties in the absence of collusion, mistake or fraud, none of which are present in this case. See *Grossman v. Grossman,* 234 Md. 139, 144, 198 A. 2d 260 (1964) ; cf. *Bellofatto v. Bellofatto,* 245 Md. 379, 226 A. 2d 313 (1966).

As we find the separation agreement to be clear and unambiguous there is, of course, no need to remand the case for the taking of the parol evidence. *Walker v. Associated Dry Goods Corp.,* 231 Md. 168, 189 A. 2d 91 (1963). The wife is barred by the separation agreement from receiving any award of alimony.

*Order reversed, the appellee to pay
the costs.*